**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DANIEL HOPKINS,

    Plaintiff-Appellee,

 v.

INTEGON GENERAL INSURANCE
COMPANY,

    Defendant-Appellant.

No. 21-35196

D.C. No. 2:18-cv-01723-MJP

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted March 7, 2022
Seattle, Washington

Before: NGUYEN, MILLER, and BUMATAY, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge BUMATAY.

 Defendant-appellant Integon General Insurance Company appeals the

district court's judgment awarding plaintiff-appellee Daniel Hopkins $888,474.75

after a jury trial. We have jurisdiction under 28 U.S.C. § 1332. For the reasons

explained below, we affirm in part, and vacate and remand in part.

 1. Integon argues that the district court erred in failing to grant judgment as a

---

  [*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

matter of law on its claim under Washington's Consumer Protection Act (CPA) because Hopkins failed to show that he was "injured in his … business or property" by Integon's conduct. Wash. Rev. Code § 19.86.090; *see Peoples v. United Servs. Auto. Ass'n*, 452 P.3d 1218, 1221 (Wash. 2019). For two independent reasons, we disagree.

First, the district court correctly determined that Hopkins could satisfy the CPA's injury requirement with evidence that he incurred expenses investigating Integon's conduct. Specifically, Hopkins presented evidence that he spent $16,000 hiring an insurance expert to investigate whether Integon acted in bad faith. The Washington Supreme Court has held that an insured is injured for purposes of the CPA if, "as a result of [an insurer's] bad faith investigation," the insured "hired insurance experts to determine if coverage was denied in bad faith." *Coventry Assocs. v. Am. States Ins. Co.*, 961 P.2d 933, 939 (Wash. 1998).[1] Although the Washington Supreme Court has subsequently distinguished investigative and litigation expenses, *see Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 902 (Wash. 2009), it neither applied that distinction to expert fees nor suggested that the distinction turns on when expenses are incurred relative to the complaint.

---

[1] We decline to follow the Washington Court of Appeals decision in *Lock v. American Family Insurance Co.* because the Washington Supreme Court decided this issue in *Coventry*, and *Lock* neither discussed *Coventry* nor addressed its underlying rationale. 460 P.3d 683, 694-95 (Wash. Ct. App. 2020).

Moreover, in these circumstances, as the district court noted, the investigation of bad faith could only be made after Hopkins received his claims file from Integon. Therefore, the district court did not err in declining to grant judgment as a matter of law for Integon on this basis.

The dissent contends that the district court did not conduct "the proper inquiry under Washington law." Dissent at 2. But the district court looked to facts from which the jury could have reasonably concluded that Hopkins's expert fees were "incurred … as a result of [Integon's] bad faith investigation," *Coventry*, 961 P.2d at 939, which is exactly the inquiry that Washington law requires, *see Panag*, 204 P.3d at 902 ("Investigation expenses and other costs resulting from a deceptive business practice sufficiently establish [CPA] injury."). The district court correctly determined that the jury drew an inference that *Coventry* allows, as the dissent appears to acknowledge, Dissent at 2 n.1.

Second, we agree with Hopkins that he suffered injury for purposes of the CPA because he did not receive reimbursement for $931 in medical expenses that exceeded his $10,000 personal injury protection (PIP) coverage. We reject as inconsistent with Washington law Integon's argument that Hopkins's unreimbursed medical expenses are personal injury damages distinct from injury to business or property under the CPA. *See Peoples*, 452 P.3d at 1222 ("[T]he deprivation of contracted-for insurance benefits is an injury to 'business or

3

property' regardless of the type of benefits secured by the policy."). We are also unpersuaded by Integon's argument that there was an insufficient causal connection between the unreimbursed expenses and Integon's conduct because Integon offered a settlement exceeding $931. The district court did not err in concluding that the jury reasonably found causation because Integon failed to make a reasonable settlement offer. Finally, by failing to raise the issue in its Rule 50(a) motion, Integon failed to preserve its argument that Hopkins's unreimbursed medical expenses were covered by his $25,000 settlement with the at-fault driver's insurer, and no plain error occurred. *See EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) ("[I]n ruling on a Rule 50(b) motion based on grounds not previously asserted in a Rule 50(a) motion, 'we are limited to reviewing the jury's verdict for plain error, and should reverse only if such plain error would result in a manifest miscarriage of justice.'" (citation omitted)). Therefore, Hopkins's $931 in unreimbursed medical expenses independently establishes injury under the CPA.[2]

---

[2] We disagree with the dissent's characterization that the district court took this issue away from the jury. Dissent at 2-3. Only Integon's position would produce that outcome. Integon conceded below that the $931 in medical expenses exceeded Hopkins's PIP coverage and made no argument at trial that this amount was covered by the at-fault insurer. To grant Integon's motion for judgment as a matter of law on this basis, the district court would have prevented the jury from making reasonable inferences about injury and proximate cause based on a competing factual argument that Integon never advanced at trial. We need not

4

2. Integon argues that the district court erred in instructing the jury that it owed a duty of equal consideration to Hopkins in handling his underinsured motorist (UIM) claim, and in declining to instruct the jury that Integon could assert the responsible party's defenses. We agree.

Under Washington law, "a UIM insurer 'stands in the shoes' of the tortfeasor," and "UIM insurers are allowed to assert liability defenses available to the tortfeasor." *Ellwein v. Hartford Accident & Indem. Co.*, 15 P.3d 640, 647 (Wash. 2001), *overruled on other grounds by Smith v. Safeco Ins. Co.*, 78 P.3d 1274 (Wash. 2003); *see also Ki Sin Kim v. Allstate Ins. Co., Inc.*, 223 P.3d 1180, 1192 (Wash. Ct. App. 2009) ("UIM insurers are allowed to assert liability defenses available to the tortfeasor because UIM insurance is designed to put the insurance company in the position of the tortfeasor with liability insurance."). While an insurer must give "equal consideration" in other contexts, an insurer's duty in the context of defending UIM claims is "different." *Lock*, 460 P.3d at 691; *see also Ellwein*, 15 P.3d at 647 ("How could a UIM insurer 'stand in the shoes' of the tortfeasor, with the ability to assert liability defenses, while at the same time give 'equal consideration' to the insured's interest?"). Therefore, the district court's instructions overstated Integon's duty as a UIM insurer under Washington law.

---

address the dissent's instructional error theory because Integon never advanced that argument in its briefs. Dissent at 3.

5

Hopkins has failed to sustain his burden to show that the district court's error was more likely than not harmless. *See BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231, 1243 (9th Cir. 2021). At closing, and throughout trial, Hopkins emphasized that Integon failed to give equal consideration to Hopkins's interests. Moreover, part of Integon's defense was that it had the right to question the evidence that Hopkins's injuries were permanent and caused by the 2016 accident. Accordingly, we cannot conclude that the jury more probably than not would have returned the same verdict had it been properly instructed. *See id.* We therefore vacate and remand for a new trial on Hopkins's bad faith and CPA claims.

3. Whether the district court properly excluded Integon's corporate representative turns on whether any inadequate disclosure was "harmless." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) (quoting Fed. R. Civ. P. 37(c)(1)). That analysis may turn out differently under the changed circumstances of a new trial. We therefore remand for the district court to reevaluate whether any inadequate disclosure was harmless under Rule 37(c)(1), and we need not reach Integon's argument that its disclosure complied with Rule 26(a).[3]

---

[3] We also need not reach the other issues raised by Integon on appeal – whether the district court erred in declining to give Integon's proposed instruction regarding

6

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.** The parties shall bear their own costs.

---

redactions and whether the district court erred in refusing to segregate attorney's fees for work on Hopkins's CPA claim.



*Daniel Hopkins v. Integon General Insurance Company*, No. 21-35196
BUMATAY, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that we must remand this case because of the instructional error on Hopkins's underinsured motorist claim. I also agree that the district court should reevaluate whether the exclusion of Integon's corporate representative was appropriate under Federal Rule of Civil Procedure 37(c)(1). But I depart from the majority in affirming the district court's ruling on Washington's Consumer Protection Act ("CPA"). The CPA requires that Hopkins show he was "injured in his . . . business or property" by Integon's actions. Wash. Rev. Code §§ 19.86.090; 19.86.020. Hopkins advances two theories of "injury" under the CPA: (1) that his expert witness fees constituted an injury; and (2) that his unreimbursed medical expenses constituted an injury. But because neither theory works under Washington law, I must respectfully dissent.

First, Washington law is clear: investigative expenses may constitute an "injury" under the CPA, but litigation expenses may not. *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 62 (2009) (en banc). And here, Hopkins began using his expert witness and accruing fees eight months *after* he filed his complaint alleging the CPA violation. Hopkins thus can't fairly say that he employed the expert witness to "dispel uncertainty" about the nature of his claim. *Id.* Hopkins instead retained the expert witness to help him prevail on his claim—this is not a cognizable injury under Washington law. *See id.* (observing that "litigation

1

expenses incurred to institute [a] CPA counterclaim does not constitute injury" (simplified)). As a recent Washington court explained, the "expense of prosecuting [a] CPA claim," such as incurring "expert witness fees," "does not support a claim for injury to business or property." *Lock v. Am. Fam. Ins. Co.*, 12 Wash. App. 2d 905, 927–28 (2020).[1]

The district court ruled that Hopkins's expert witness fees constituted a CPA "injury" because the expert "was only able to fully evaluate [Hopkins's] claim after the discovery process." But that is not the proper inquiry under Washington law and so the district court's conclusion was erroneous.

Second, while Integon is incorrect that unreimbursed medical expenses can never serve as an "injury" for CPA purposes, *see Peoples v. United Servs. Auto. Ass'n*, 194 Wash. 2d 771, 779–80 (2019), it makes a cogent argument that Hopkins's medical expenses of $913 were reimbursed. Hopkins received a $25,000 payout from the at-fault driver's insurer and $10,000 in personal injury protection. At the

---

[1] *Coventry Associates v. American States Ins. Co.*, 136 Wash. 2d 269, 283 (1998) (en banc) does not compel liability here. That case stands for the simple proposition that "hir[ing] insurance experts to determine if coverage was denied in bad faith" may constitute an "injury" under the CPA. *Id.* It doesn't say that expert fees are always an injury, and *Panag* instructs that there are limits to such expenses constituting an injury. Here, Hopkins's use of an expert was not for investigative purposes; it was to prosecute his CPA claim. The expert fees thus can't be an injury. *See Panag*, 166 Wash. 2d at 62.

very least, whether Hopkins's medical expenses remained unreimbursed is a question of fact that should have been left to the jury. *Cf. Panag*, 166 Wash. 2d at 65. But since the district court instructed the jury that the medical expenses were unreimbursed as a matter of law, it committed an error.

I thus respectfully dissent from the majority's CPA analysis.